The case on the afternoon docket is People of the State of Illinois v. Anthony Hubbard, 5-120-033. Mr. Wells? Good afternoon. Counsel. My name is Larry Wells. I'm representing the defendant, Mr. Hubbard, in this cause. Mr. Hubbard pled guilty to one count of predatory criminal sexual assault. His post-conviction petition was denied after an evidentiary hearing. He has raised two issues before this court in his brief, but he's going to withdraw issue number two and go forward only with the first issue in the case. The first issue in this case is that – Can I ask what you mean by withdraw? You're not saying that you're not just going to argue it. You're just not going to argue it. You're saying that issue's withdrawn. Yes, we no longer assert. Okay. Did you state what that issue is for the record for us? Yes. It's withdrawn. The issue that is withdrawn is presented in the brief as whether Mr. Hubbard's sentence is void, where there was no PSI and no proper finding on the record of Hubbard's full criminal history. And instead, we are going to go forward only on the question of whether it would be a substantive due process violation to allow him to remain convicted, where there has been a persuasive demonstration that he did not commit the act used by the state to convict him. Now, this is a substantive due process argument, not a procedural due process argument, and I stress that because there's considerable confusion about that in the state's brief. Mr. Hubbard was charged with three sexual crimes. He pled guilty to one of them. Now, we're not arguing that his guilty plea was not knowing or involuntary as a procedural due process problem. We're arguing substantive due process. When he pled guilty, the state established as a factual basis which of these events that they were relying upon to find him guilty. And in that factual basis, they stated that the attacker penetrated the complainant's vagina, ejaculated on her stomach and on the sheets. The complainant gathered up the sheets, saved them, gave them to the police, and she identified the source of the ejaculate as her attacker. That was the event the state relied upon to find Mr. Hubbard guilty. That was the basis of the guilty plea. After the guilty plea, there was a DNA test done on those sheets, and it was determined by that test, and it's undisputed by the state, that the source of that ejaculate was not Mr. Hubbard, but instead the complainant's stepmother. Because the state selected this event as a marker, as opposed to any of the other events that they might have charged, we have a persuasive demonstration that Mr. Hubbard did not commit the event, the acts that were used to convict him. Let me ask you a hypothetical question. Okay, suppose he would have gone to trial, and at trial, everything you've just said came out. In other words, that originally the victim had said that his sperm would be found on the sheets. It turned out it was somebody else's, but she testified still, Mr. Hubbard had sex with me, and he was convicted. Why couldn't that conviction stand? I think that conviction would not stand because there would, again, be a persuasive demonstration that he did not commit the acts. Wouldn't it just go to the credibility of the victim, which would then be determined by the jury? I think that it would instead fall upon those same cases, the cases that ended up with many reversals, where there is no unindicted co-ejaculator. There's an ejaculation that's directly connected to the events, and there's no other way that it could be resolved. But the credibility of this little girl was pretty substantiated when she was able to describe the defendant's penis and had a mole on it. She went to great lengths from a credibility point of view that would have allowed a conviction notwithstanding the co- Some unindicted, as you say, unindicted person who's seen those found on the sheets. Do you disagree with that? Yes, I don't think that there's any reason to believe that that information could not come from some other source. I don't see why that would be considered determinative, particularly here where the State has chosen the factual basis for itself. We rely primarily for this on the White case. And one of the – the State is confused about the procedural and substantive due process problem, but one issue that they do raise, which is relevant, is whether it's necessary for there to be an ejaculation. And the State simply says because ejaculation is not required for there to be a conviction, then there's no need for us to look any further into that because it's not one of the elements. And we rely on the case of people versus life. In the White case, the defendant was convicted of a crime that did not require the use of a weapon. Nevertheless, in the factual basis, the State specified that in the particular case that we've been talking about, the events that we're talking about, a gun was used. And it turns out that there was an improper sentence given because there was a mandatory firearm added. But that – now you're talking about a particular fact that requires that a certain thing happen. I mean, here we're – I mean, he could – the fact that his ejaculate was not found on the sheets does not mean he's not guilty of predatory criminal sexual assault. He still could have committed that crime whether or not his ejaculate was found on the sheets. I completely agree with that. But you can't get the mandatory excess sentence if you don't have a firearm. I agree with all that. The difference is that the – in this case, as in White, the State specified, particularized the type of the occurrence. They specified that this occurrence was marked by a particular act. The case – they cannot withdraw that now. There's legal significance in the use of the gun and there's legal significance in the ejaculate, both of those things. So let me ask another question. So if any fact stated by the State in their, you know, factual basis in a plea, if any one fact turns out to be untrue, it all has to get overturned. No. No, we are not arguing – we are not arguing that there are non-trivial details in factual basis. We are arguing that in light of the DNA testing that has been used so many times to reverse convictions, we know this is a reliable scientific test to prove identification. It's been used time and again to reverse convictions. The State did not have to pick this particular event to rely upon. They could have relied on some other, just like in White. They did not have to pick an event where a gun was used. They could have picked another one. But in fact, in this case, that is what they did do. The court in White said we do not dispute the State's attorney's endowed exclusive discretion to decide which of several charges shall be brought away from charges at all. It's also true that this discretion permits the State to enter plea agreements wherein the State, if it so chooses, may negotiate away the firearm element when the defendant is charged with armed robbery, for example. But that is not what happened here. And again, the State could have selected some other method of specifying which of the acts the defendant was going to be held to. But they specified this one, the occasion that is marked by the ejaculation of the attacker. And we know that's not the defendant. It's true he could be guilty, but the same thing would happen in White. Well, perhaps the defendant is guilty of some other crime that did not involve a weapon. It's perfectly true. That's just not what happened here. What happened here is that the defendant was found guilty of a crime where the attacker ejaculated on the complainant, and his ejaculate was on the sheets. That's what happened here. That's what the State specified, and they have to be held to that. They can't find that particularizing fact to be embarrassing for the first time on appeal and pretend it did not happen. We know that the defendant did not commit these acts because it's identified as the act where the attacker ejaculated on the complainant and the sheets. That is a sufficiently persuasive demonstration that the defendant did not commit the acts that the State relies upon to require a reversal of this conviction. And new trial? They can certainly bring up the other charges. You want it reversed outright, and they can never try him on this charge? Vacate his guilty plea? I mean, anyone that would involve this occurrence, where the attacker ejaculated on the complainant and on the sheets, could not be charged. It's a sufficient demonstration that he's not guilty. Thank you. Ms. Chandler? Before we begin, we have your motion to cite additional authority. In that case, we'll just start right with that. The reason I wanted to put these two copies of the Post-Conviction Act is because of the defendant's emphasis in his refineries and in his argument here today on what he sees as an extreme distinction between substantive due process and procedural due process. And I don't mean to say that there's not an extreme difference between those two. But the defendant is relying on people versus Washington in order to make this argument. And Washington is simply the case that decided that you could raise a claim of factual innocence based on newly discovered evidence. Before that, we looked at the 1996 statute, and you read what kind of claims you can make in a post-conviction petition. You couldn't make a claim of actually innocence based on newly discovered evidence. The Illinois Supreme Court said, well, we've decided you can't. And that decision is now reflected in the Post-Conviction Act, which does allow for a claim of actual innocence. But it's important that it says actual innocence based on newly discovered evidence. Therefore, defendants' argument that Washington somehow comes up with two different kinds of actual innocence, procedural due process actual innocence and substantive due process actual innocence, first of all, is not supported by Washington itself. It's certainly no case that's ever made such an argument before. And I think most importantly, the statute, the statute as it existed before Washington and the statute as it was amended after Washington, which added to the statute what Washington said, that's the intent of Washington. And the thing is, Washington, and here I'm quoting from the opinion, the issue is whether Washington's claim of newly discovered evidence can be raised in a petition under the Post-Conviction Hearing Act to entitle Washington to a new trial. So right off the bat, they very clearly tell you that the claim of actual innocence is based on newly discovered evidence. They close the case by saying, we therefore hold as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is practicable as a matter of due process. And Washington spends a lot of his time discussing what was at that time the fairly recent decision of Herrera v. Collins, the United States Supreme Court decision, and in which the United States Supreme Court said, we're sorry, but you just can't bring a claim of actual innocence based on newly discovered evidence in a federal habeas case. You just can't. And so Illinois is saying, well, we think under the Illinois Constitution you can't. But nonetheless, the issues were very similar in Herrera. And again, Herrera dealt with newly discovered evidence. So that's the point and the only point that I need to make about the fact that this was certainly not newly discovered evidence. The defendant was told that the sheet had been sent off. He knew it wasn't his DNA. He said that when he was interviewed. So his claim in his post-petition that he was shocked to find this out is kind of difficult to believe. The other point I'd like to make is that the defendant was faced with some hard choices here. He had at that point in time been charged with one count of predatory criminal sexual assault. He was told that they were going to file two more counts. He was told that these cases were mandatory consecutive sentences and that he could get up to 30 years for each one of them. So he could have gotten 90 years in prison. He was offered a 20-year deal. He knew that there was semen on the bed sheet. He knew the DNA test had not been completed. He knew the semen wasn't his. But he knew he had had sex with Sierra. He admitted that in his interview. And so he just makes a fairly wise decision that I better take the offer that I've got. Even though I know that my semen's not on the sheets. And the thing is, the distinction in this case, which I believe you've noticed, Justice Stewart and Justice Cates both, is that the fact that his semen is not on the sheets does not mean that he did not have sex with this little girl. That's the difference. In the defense counsel's opening brief, they talk about a Texas case. You say that he washed the sheets? It says in the record that he did the wash in the home. So to say that, well, that's not his semen on the sheets does not mean he didn't have sex with this little girl. Isn't the problem here that what the defense is asserting, it's not a material element of the offense? I mean, if you're going to make a claim of actual innocence based on new evidence that does clearly obviate proof of a material element of the offense, that's one thing. But, you know, his semen could be found not to be on the sheets, and he can still be convicted of predatory criminal sexual assault. Absolutely. That seems to be, like, the problem with the claim of actual innocence. As I understand the defendant's argument, he seems to be saying that because one of the things that is mentioned in the factual basis, and by the way, it's just about the last thing mentioned in the factual basis, was that the defendant had ejaculated on the sheets, just because that one fact is not true, then he's not guilty? That's, as Justice Cates knows, this little girl was very credible, and in the factual basis, the state said that the victim would testify that the defendant asked for a sexual relationship, that he asked her to put on her mother's clothes, that he said he'd give her rollerblades, that she was supposed to get on her back if he was on his knees, that he put his penis in her vagina. The interview with the child advocacy personnel, again, was very detailed. As Justice Cates, as you know, she even told them about a mole on his penis, which the defendant admitted he had, by the way. So she's seen his penis. The defendant admitted this detail about the sex for the rollerblades, and he admitted the detail about asking the little girl to put on her mother's negligee. So we have, in this case, the victim would have testified. There were three, I believe, people that would have testified on 1510. That would have been Tracy McPherson from the Child Advocacy Center, a friend, and the mother. That would have all corroborated the victim's testimony. And we have the defendant's confession. And then the last thing, after we've talked about the victim's testimony in the factual basis, after they've talked about the child advocacy interview, we've talked about the mother and the friend that would also testify, then he says that the defendant ejaculated on the sheets and that the victim kept them and turned them over, and that further testing to determine the donor of that semen has not yet been conducted. That's what it says in the factual basis. And I think, Justice Stewart, your analogy to if this had gone to trial and everything that happened happened, they test the sheets and they say it's not his ejaculate, they could most definitely still have found him. Here I know I strongly disagree with the defense counsel that they could still most definitely have found him guilty. The little girl's credibility certainly could be affected by this information, but could he have been found guilty given all of the testimony there? Yes, and it's simply a matter of how it would have affected her credibility. Thank you. Mr. Wells, rebuttal. With all due respect to one of the opposing counsels, they do not understand the Washington case. The Washington case is a procedural due process case, yes, but it's also a substantive due process case. Remember the United States Supreme Court refused to recognize a freestanding claim of innocence. The Illinois Supreme Court did, but why? Why? And they explained that very carefully. They said imprisonment of the innocent would also be so conscious shocking as to trigger the operation of substantive due process. They say we think that the court, the United States Supreme Court, overlooked that a truly persuasive demonstration of innocence, close quote, would in hindsight undermine the legal construct precluding a substantive due process analysis. So anything that's argued in the state here today about what the events were like at the time of the guilty plea where the defendant facing a 12-year-old girl who was going to testify that he was guilty, when the defendant has prior felony convictions and he wants to make the best guilty plea that he can at that time, that's all about the events that come up to the time of the guilty plea. That's procedural due process, the fairness of this. But if it's established that the event itself relied upon by the state could not have occurred as they rely upon it for the defendant to be guilty, then he must be found not guilty. There's where you run into the problem. I think, you know, do you have that truly persuasive evidence of innocence? And, you know, okay, let's take another hypothetical. Let's suppose he filed a Freedom of Information Act request and instead of getting this DNA test, he got the victim's birth certificate and it turns out she was 18 on the day of the event. That would be a different story. It goes to a material element of the offense. But whether or not I'm having trouble understanding how the fact that his semen was not found on the sheets makes him just innocent. Well, he cannot be guilty of the particular act that they used in support of this in the guilty plea. Certainly he might be guilty of some other act. But in this act, the one that's identified by the state and particularized by the state, we know what's supposed to have happened. The attacker penetrated the complainant's vagina, ejaculated on the complainant's stomach, and left his ejaculate on the sheets. Well, we know that that's what the victim said happened. That's what the state relied upon. They're reciting what the evidence would be. The victim would say these things happened. And it's also the thing that's used for the defendant to decide whether he should plead guilty or not guilty. Which of the events is the state selecting? They could have selected some other event. But they didn't. They selected this event, just like in white. They didn't have to put a gun in there. They didn't need a gun. But they did use the gun. The gun particularizes the event that they're relying upon, and the defendant's entitled to rely on that. And the state is stuck with it on appeal. That's the event, the event where the ejaculation occurred. If that does not provide a truly persuasive demonstration of innocence, in hindsight, we lose. But the connection of the ejaculate to the events they relied upon does support that kind of conclusion. There's a truly persuasive demonstration of innocence. He can't have done what the state says he did. He might have done something else. But that's neither here nor there. Unless there are other questions. Thank you, Mr. Wells. We'll take a matter on the advisory commission.